IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JULIE P. WESTENDORF, | * | |
| | * | |
| Plaintiff, | * | 4:01-cv-90098 |
| | * | |
| v. | * | |
| | * | |
| E.I. du PONT de NEMOURS and COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., | * | |
| | * | |
| PIONEER HI-BRED INTERNATIONAL, INC. CHANGE IN CONTROL SEVERANCE COMPENSATION PLAN FOR MANAGEMENT EMPLOYEES, | * | |
| | * | |
| SEVERANCE COMMITTEE, as fiduciary of PIONEER HI-BRED INTERNATIONAL, INC. CHANGE IN CONTROL SEVERANCE COMPENSATION PLAN FOR MANAGEMENT EMPLOYEES, | * | MEMORANDUM OPINION AND ORDER |
| | * | |
| Defendants. | * | |

On October 16, 2002, the Court adopted as its Order the Stipulation of the parties resolving

Plaintiff's claims in this action, which concerned the interpretation of the Pioneer Hi-Bred International,

Inc. Change in Control Severance Plan (the "CIC Plan") and Plaintiff's claim to severance benefits

under the CIC Plan. The Court now has before it Plaintiff's Motion for Attorneys' Fees and Costs,

filed pursuant to Rule 54 of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's

Motion is **granted in part** and **denied in part**.

FILED 9/8/2003 4:30:39 PM, USDC, Southern District of Iowa

## I.    Background of the Case

On March 15, 1999, Defendant Pioneer Hi-Bred International, Inc. ("Pioneer") entered into an agreement to merge with Defendant E.I. DuPont de Nemours and Co. ("DuPont").  The merger, effected in October, 1999, constituted a "Change in Control" under the terms of the CIC Plan, entitling CIC Plan participants to severance benefits if 1) they experienced an "Involuntary Termination" within three years of the Change in Control and 2) if their application for CIC Plan benefits was approved by the Severance Committee of Pioneer (the "Severance Committee").  Ms. Westendorf, a participant of the CIC Plan at the time of the merger, resigned on October 15, 1999 and submitted a claim for benefits under the CIC Plan to the Severance Committee, asserting that she had experienced changes in job responsibilities constituting an "Involuntary Termination" under the CIC Plan.  Following the Severance Committee's denial of her claim on November 18, 1999, Ms. Westendorf appealed to the "Authorization Committee" of Pioneer on January 20, 2000, but was unsuccessful.

### A.    History of the Litigation

In October, 1999, Plaintiff retained Kutak Rock, LLP, of Omaha, Nebraska ("Kutak Rock") to assist her in presenting her claim for benefits to Pioneer.  Once Plaintiff's application was denied, Kutak Rock continued as her counsel to contest Pioneer's denial of the claim.  In January, 2001, shortly before she filed suit, Plaintiff also retained Duncan, Green, Brown, Langeness & Eckley, of Des Moines, Iowa ("Duncan Green"), to serve as local counsel.  On February 14, 2001, Plaintiff brought this action, seeking benefits under the CIC Plan, plus attorneys' fees and expenses.

Approximately ten months before Plaintiff brought suit, Pioneer employees had already filed a class action against Pioneer and DuPont in connection with the CIC Plan, *Bublitz v. E.I. duPont*

*deNemours & Co.,* No. 4:00-cv-90247, raising allegations similar to those made in this case.  Pioneer and DuPont had also been sued in two other individual actions brought under the CIC Plan, which were later consolidated with the *Bublitz* class action for discovery and trial. *See Foster v.  E.I. duPont deNemours & Co.,* No. 4:00-cv-90286 (removed on June 7, 2000);  *Pennington v.  E.I. duPont deNemours & Co.,* No. 4:00-cv-90375 (filed July 19, 2000).

On June 14, 2001, the *Westendorf* action was consolidated with *Bublitz* and the other individual actions for discovery purposes.

Less than one month later, on July 12, 2001, Plaintiff's counsel filed a motion seeking relief from the *Bublitz* discovery schedule, citing difficulties in accessing documents on CD-ROMs produced by the parties in *Bublitz* and in coordinating depositions with *Bublitz* class counsel.  The Court permitted Plaintiff to re-depose four individuals, but otherwise denied Plaintiff's motion.  On September 13, 2001, Plaintiff again moved for relief from the joint discovery schedule and asked that her case be severed from the others.  While noting its frustration with Plaintiff's inability to proceed, Magistrate Judge Shields granted Plaintiff's motion for deconsolidation and relief from the discovery schedule.[1] Following deconsolidation, Plaintiff neither took or defended any depositions, served only written discovery, and filed no substantive or dispositive motions, with the exception of an unopposed Motion to Stay Deadlines and to Schedule Status Conference, which was denied.

_____

[1] Magistrate Judge Shields, in his Order on Plaintiff's motion of September 13, 2001, voiced his concerns as follows: "Plaintiff needs to immediately make an election as to who the responsible attorneys will be on her behalf, and be able to move forward.  The Court would note that there are approximately six attorneys of record on behalf of plaintiff, and it is somewhat perplexing to the Court to be confronted with contentions that notwithstanding that number of attorneys, plaintiff cannot adequately participate in discovery."  (Clerk's No. 27, at 2).

B.     Settlement; Application for Attorney Fees and Expenses

Following a settlement conference held on June 19, 2002, the parties agreed to settle the merits of this case, and a settlement agreement, which reserved Plaintiff's claim for attorney fees and costs, was signed on September 18, 2002.[2]  Following the entry of judgment on October 17, 2002, Plaintiff filed the instant Motion for $233,840 in attorneys' fees and $42,774 in expenses incurred through November 30, 2002.[3]

Plaintiff's counsel has also submitted a supplemental request for fees and expenses for the period from December 1, 2002 to approximately July 31, 2003, including $39,531.75 in fees and $17,508.23 in expenses claimed by Kutak Rock and $17,820.00 in fees and $5,517.81 in expenses claimed by Duncan Green.  As supplemented, the total attorney fees requested by Plaintiff's counsel through July 31, 2003 are $281,865.06 and the total expenses incurred by Plaintiff's counsel through July 31, 2003 are $65,800.60.[4]

Plaintiff's request has been fiercely contested by Defendants as overreaching and excessive.  In support of their respective positions, both Defendants and Plaintiff have retained experts to audit the

_____

[2]  As the settlement agreement of the parties is confidential, the Court will make reference to the amount of the settlement only in general terms.

[3]  Based on the invoices originally submitted by Plaintiff's counsel, Defendant's expert has calculated the aggregate fees and expenses incurred at $285,495, of which approximately $276,499 are claimed in Plaintiff's motion.  *See* Legal Fee Review & Report of Bruce R. Meckler, Esq., Jan. 30, 2003, at 1.

[4]  This aggregate fee figure includes Kutak Rock fees of $237,208.50 and fees for Duncan Green of $44,656.56, per the supplemental affidavits of counsel.  The aggregate expense figure includes Kutak Rock expenses of $57,039.98 and expenses for Duncan Green of $8,760.62, per the supplemental affidavits of counsel.

attorney fees and costs requested, and the Court will reference their reports in the following discussion. However, due to the practical limitations of submitting briefings to the Court and obtaining these expert audits, the parties' arguments concern only the initial fee request submitted, covering fees and expenses through November 30, 2002. The Court will address separately the supplemental request, which covers fees and expenses of Plaintiff's counsel from that date through July 31, 2003.

## II.    Discussion

In the *Bublitz* litigation, this Court has already had occasion to consider the appropriateness and reasonableness of an award of attorneys' fees and costs incurred in pursuing CIC Plan benefits. It is somewhat disconcerting that despite this background and the benefit of the Court's analysis in *Bublitz*, the parties were not able to agree on the amount of attorneys' fees due. Instead, here, as in *Bublitz,* the considerable sums claimed by Plaintiff's counsel have resulted in a lengthy (and costly) extension of this action solely for the purpose of determining how much Plaintiff's counsel is entitled to receive for their efforts in this case.

Fee-shifting provisions, whether contractual or statutory, serve an important function in enabling plaintiffs to assert their rights. However, echoing the sentiments of Justice Brennan in *Hensley v. Eckerhart,* the Court believes that "in systemic terms, attorney's fee [litigation] take[s] up lawyers' and judges' time that could more profitably be devoted to other cases, including the substantive [claims fee-shifting provisions were] meant to facilitate." 461 U.S. 424, 455, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (J. Brennan, dissenting). The Court has already waded through hundreds of pages of expert's reports, memoranda, and billing entries contesting fees for tenths of an hour, and has no wish to devote more effort to calculating precisely how much of the Court's time, and the taxpayers' dollar, has been

devoted to this exercise.

Nevertheless, it remains the duty of this Court to assist the parties in determining the amount of a reasonable fee and the Court now turns to that task. Defendants first assert that Plaintiff's counsel's request is presumptively unreasonable and should be denied in its entirety. Alternatively, they contend that roughly $130,559 in fees and expenses should be deducted from the total of approximately $276,499 claimed by Plaintiff's counsel in its initial request, and that the supplemental request of Plaintiff's counsel should be similarly reduced.[5]

A.     Basis of Fees and Costs Awarded

Plaintiff's counsel argues that they are entitled to attorney fees and costs under Section 9.1 of the CIC Plan, or alternatively, under Section 1132(g)(1) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").[6] The Court has already interpreted Section 9.1 of the CIC Plan in the *Bublitz* litigation and has determined that Section 9.1 of the CIC Plan, rather than Section 502(g) of ERISA, governs a request for attorney fees and expenses incurred in resolving a

---

[5] The Court wishes to acknowledge its receipt of a letter from Plaintiff's counsel, dated August 27, 2003, after the filing of all submissions of the parties on this motion, which objects to certain references made by Defendants in their Final Argument in Support of Resistance to Plaintiff's Motion on Attorneys' Fees and Costs as beyond the scope of the record in this case. The letter states that Defendants' counsel have consented to its transmission to the Court. The Court's analysis of Plaintiff's Motion does not reference or take into consideration any of the items objected to.

[6] Section 9.1 of the CIC Plan provides that: "The Company shall pay all legal fees, costs of litigation, and other expenses incurred by each Participant or the Participant's beneficiary as a result of the Company's contesting the validity, enforceability or interpretation of the Plan." Under ERISA, an award of attorney fees is no longer presumed but lies within the clear discretion of the district court. 29 U.S.C. § 1132(g)(1). *See Martin v. Arkansas Blue Cross and Blue Shield,* 299 F. 3d 966 (8th Cir. 2002) (*en banc*). *See also Gunderson v. W.R. Grace Co. Long Term Disability Income Plan,* 874 F.2d 496 (8th Cir. 1989).

claim for CIC Plan benefits, such as Plaintiff's claim here. *See Bublitz v. E.I. duPont deNemours & Co.,* 224 F. Supp. 2d 1234 (S.D. Iowa 2002). The Court has further determined that although Section 9.1 is not expressly limited to *reasonable* attorneys' fees and expenses, the provision must be read to contain an implied limitation of reasonableness. *See Id.,* at 1245; *Coop. Fin. Ass'n, Inc. v. Garst*, 927 F. Supp. 1179, 1187 (N.D. Iowa 1996). Defendants do not dispute this. However, they challenge the reasonableness of the fees and costs requested on a number of grounds, which the Court will consider in turn below.

B.    Defendant's Request to Deny Plaintiff's Motion in its Entirety

Defendants argue at the outset that the fee request of Plaintiffs' counsel is so grossly inflated that the Court should deny it altogether. As in *Bublitz*, Defendants cite to *Brown v. Iowa*, 152 F.R.D. 168, 175 (S.D. Iowa 1993), where then-Magistrate Judge Bennett noted that "[i]f, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be a reduction of their fee to what they should have demanded in the first place." *Id.* at 175. The appropriate deterrent in such cases is denial of the entire request. *Coop. Fin. Ass'n, Inc. v. Garst*, 927 F. Supp. 1179, 1187 (N.D. Iowa 1996) ("an intolerably inflated fee request justifies a complete denial of fees") (quoting *Brown*, 152 F.R.D. at 175). Plaintiffs here request fees and costs that total over $276,000, exclusive of the supplemental requests. Plaintiff's maximum benefit under the CIC Plan was $375,000,[7] and the award sought in the initial fee

---

[7] Defendants' position is that the maximum benefit Plaintiff could have received under the Plan was $375,000. *See* Defendants' Brief at 8. Plaintiff's demand letter to DuPont puts the benefit

request is over two-thirds of this amount and far exceeds the settlement Plaintiff ultimately accepted.

However, while the Court concludes that this request is inflated given the results achieved and the work

performed by Plaintiff's counsel, the Court does not believe it is "grossly inflated" or so "outrageously

unreasonable" as to warrant a total denial of fees.

     C.    Disputed Fees and Expenses

     As the Court determines that Plaintiff's counsel are entitled to recover some amount of their

fees and expenses, it now considers Defendants' argument that Plaintiff's counsel has failed to exercise

appropriate billing judgment and that substantial reductions must therefore be made to bring the award

within proper bounds. *See, e.g. Hensley v. Eckerhart,* 461 U.S. 424, 430, n.4, 103 S. Ct. 1933, 76

L. Ed. 2d 40 (1983) (fee awards should "not produce windfalls to attorneys"). The Court agrees that

Plaintiff's requested award for fees and expenses is excessive in a number of respects and should be

reduced as set forth below.

     1.    Presumptively Unreasonable Fees

     Defendants first assert that fees should be denied for "numerous instances" of attorney time that

was submitted as "blocked" entries without itemization of the time allotted to specific tasks by an

individual time recorder. They argue that because such entries cannot be evaluated for reasonableness,

they should be deemed presumptively unreasonable. *See Houghton v. Sipco, Inc.,* 828 F. Supp. 631,

648 (S.D. Iowa 1993) (finding "[b]lock billing . . . is grossly insufficient to satisfy the 'adequate

itemization' requirement" of the local rules because it "renders it virtually impossible" for the court to

_____

calculation at approximately $351,000. *See* Report of Dennis W. Johnson on Plaintiff's Legal Fees and
Expenses, Ex. 5.

determine the reasonableness of the time spent).  Although certain billing entries combine multiple tasks under a single several-hour entry, the Court finds that the entries themselves are in general sufficiently detailed to apprise the Court of "the nature of the task involved and the necessity of that task to prosecution of the lawsuit."  *See West v. Aetna Life Ins. Co.,* 188 F. Supp.2d 1096, 1100 (N.D. Iowa 2002) (rejecting Defendant's "block-billing" objections to a fee application).  At the same time, the Court is generally in agreement with Defendants' objections with regard to the lack of allocation of time to specific tasks.  However, the Court believes that the methodology and analysis of Defendants' expert has already taken this into account in arriving at the other deductions considered by the Court on this motion.[8]  Because this analysis has given the Court some basis for assessing the reasonableness of the time spent on each task, no additional adjustment will be made solely to account for the deficiencies of block-billed entries.

In addition, Defendants' brief asks the Court to base deductions for such "presumptively unreasonable fees" on the recommendations of their expert.  However, Defendants' expert has identified only one fee Invoice, Kutak Rock Invoice No. 522138 dated January 3, 2001, for $5,000.00, which should be denied as "presumptively unreasonable."  This invoice lists all tasks performed by Kutak Rock attorneys during December, 2000, without itemization or identification of the

---

[8] In preparing his report, Defendant's expert divided each "block-billed" entry into its constituent billing entries and assigned each an equal portion of the total time for the entry as a whole, as well as a unique "line-item allocation identifier" to enable analysis of time billed to discrete tasks. Assigning an equal portion of the total time for the "block-billed" group to each "task" clearly resulted in an over-allocation of time to certain tasks and an under-allocation to others.  For lack of a better alternative, the Court presumes that, as a whole, the deficiencies of this methodology balanced each other out and therefore the Court will base its determinations of the appropriate time to be allocated to each task on the calculations of Defendant's expert.

time recorder.  Since, as Defendants' expert acknowledges, Plaintiff's fee submission to this Court did

not seek fees contained in the disputed invoice, and he does not identify any other instances of such

inadequately documented time entries, the Court concludes that no further reduction of fees is

necessary in this regard.

2.    <u>Fees from Overstaffing, Transition of Attorneys and Duplicative Services</u>

Defendants' primary argument is that Plaintiff's counsel failed to staff the case in a manner that

would prevent the costs of litigation from outstripping the eventual recovery, and that, instead, Plaintiff's

counsel incurred substantial unnecessary fees from overstaffing, duplicative work, and transitions

between counsel during the pendency of this matter.  Therefore, they argue that $54,908 in fees should

be deducted to account for such excesses.

It appears to the Court that underlying the debate between the parties over the appropriateness

of the fee application is the question of whether the *Bublitz* litigation increased or reduced the resources

Plaintiff needed to invest in this case.  Over the course of this litigation, twenty-five attorneys at Kutak

Rock billed time on Plaintiff's behalf, as well as three partners and two associates at Duncan Green.

Defendants question the need for a legal team of this size and the overall expenditure of time on this

case, in light of the relatively straightforward nature of Plaintiff's claim and the fact that Plaintiff's

counsel had available to her discovery produced by counsel in *Bublitz*.  Plaintiff counters that this

case's relationship with *Bublitz* in fact necessitated many of the attorneys' fees incurred, in part

because Plaintiff was attempting to mount an effective defense against a formidable opponent that had

already invested millions of dollars in the *Bublitz* litigation before Plaintiff's counsel became involved.

Defendants were represented in this action by Faegre & Benson of Minneapolis, Minnesota, which also

-10-

served as Defendants' counsel in *Bublitz* and the other litigation arising out of the CIC Plan. Faegre & Benson utilized twenty-one timekeepers in the *Westendorf* case, including counsel from their Minneapolis headquarters and local counsel from their Des Moines offices, all of whom could draw on the work product already completed in *Bublitz*.

The Court's own view is that the strength of Defendants' legal team and the familiarity with the context of Plaintiff's case that they obtained via their role in *Bublitz*, certainly justified efforts on Plaintiff's part to secure counsel who would be equal to the task and would advocate vigorously on her behalf. However, as the following discussion shows, Plaintiff's counsel appears to have taken the view that this case *was Bublitz* – that it should be staffed and managed like a complex class action and that "catching up" to Defendants' counsel would necessarily require counsel to become thoroughly familiar with every aspect of *Bublitz* rather than with the more limited issues of relevance to Plaintiff's case. As a result, Plaintiff not only failed to capitalize on the work already completed by counsel in *Bublitz*, but also appears to have taken *Bublitz* as *carte blanche* to devote unlimited resources to this case, regardless of the ultimate result Plaintiff hoped to achieve. The Eighth Circuit has stressed that "[i]n reviewing the award of attorney's fees . . . [a] party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab. . . . An award of attorney's fees is compensatory, not punitive." *Int'l Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1275 n.23 (8th Cir. 1980) (citations omitted). With this in mind, the Court will now turn to the particular examples of fees for unnecessary or duplicative work that are contested by Defendants before considering whether further reductions are necessary to account for the inefficient manner in which this case appears to have been handled.

a.    Attorneys J. Schembari, Langdon and Vinjamuri

The first instance of overstaffing and duplicative billings cited by Defendants concerns $13,011.75 for time billed by Attorneys Schembari, Langdon, and Vinjamuri of Kutak Rock. Attorneys Schembari and Langdon are corporate ERISA attorneys who, along with Attorney Vinjamuri, a junior litigation associate, advised Plaintiff on her application and subsequent appeal for benefits prior to the initiation of this action, and then remained involved in the case once suit was filed.

Defendants first argue that Plaintiff's counsel is not entitled to any fees incurred prior to this action or in connection with Plaintiff's initial application and appeal for benefits. Section 9.1 of the CIC Plan provides for the payment of attorney's fees incurred "as a result of [Defendants'] contesting the validity, enforceability or interpretation of the Plan." The Court believes this provision reasonably extends to Defendants' resistance to Plaintiff's claims for benefits during the initial application and appeal stages, particularly since Defendants have previously issued payment of $3,870.94 to Plaintiff for attorney fees and costs incurred between October 16, 1999 and March 14, 2000. However, Plaintiff has included in her fee application time billed during the period for which she was already reimbursed by Defendants, and she has provided no evidence that the payment she received did not cover the time for which reimbursement is requested here.

Accordingly, the Court will deduct all time billed by Plaintiff's counsel through March 14, 2000, which includes a total of $1,149.00 billed by Attorney Schembari that Defendant's expert has included in his recommended deductions. In addition, the Court has identified approximately $3,009.00 in fees incurred by Attorney Schembari prior to that date that Defendant's expert has deemed compensable. The Court will deduct this amount as well, for a total of $4,158.00, to account for fees of Attorney

-12-

Schembari prior to October 20, 2000.

Defendant's expert also argues that a substantial portion of the time of Attorneys Schembari, Langdon, and Vinjamuri was devoted to providing advice concerning the personal tax implications of the settlement and was therefore unrelated to this lawsuit. However, Plaintiff's expert notes that the only work conducted by Kutak Rock on federal tax matters amounted to approximately $500 for an analysis of "gross-up calculations" and certain provisions of the Internal Revenue Code that was incorporated in the settlement demand submitted by Plaintiff on April 12, 2002. The Court's review of the billing entries supports Plaintiff's view of the tax research conducted and therefore no deductions will be made on this basis.

Defendants' primary objection is that once litigation counsel was brought in, Attorneys Schembari and Langdon continued to bill time which Defendants view to be duplicative and unnecessary supervision of the work of other attorneys. Defendants' expert estimates the amount of these "monitoring" efforts at approximately $11,000, not including fees related to tax matters and work done prior to the denial of Plaintiff's appeal. The Court believes it was not unreasonable or duplicative to allow corporate ERISA specialists to provide consultation in their areas of expertise to the litigation team. Nor does the Court find that the time spent by Attorney Vinjamuri, a litigation associate, on discovery-related issues was excessive. However, the Court agrees to some degree with Defendants' argument that the ongoing involvement of Attorneys Schembari and Langdon extended beyond advising on ERISA matters and resulted in an unnecessary amount of duplicative document review, internal conferencing on case management and discovery issues, and oversight of various aspects of the litigation that could have been handled by litigation counsel who were also staffing the case.

"A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992).  The Court finds that Plaintiffs' counsel have failed to carry their burden of proof in establishing a lack of duplication between the work of Attorneys Schembari and Langdon and litigation counsel in this case. The Court will deduct $9,500 for time spent by Schembari and Langdon which duplicated the efforts of litigation counsel, in addition to the $4,158 in fees for services unrelated to this litigation, for a total deduction of $13,658.00.

        b.      <u>Attorneys Arneson, Karnes, and Council</u>

Mr. Meckler has also challenged as duplicative 4.5 hours for Attorneys Arneson, Karnes, and Council.  Plaintiff has not claimed any fees for the 0.8 hours of time spent by Attorney Arneson on January 17, 2000,[9] and thus no deductions need be made for this time.  Because the time of Attorneys Karnes and Council was also billed during the period for which Plaintiff has already been reimbursed, the $705 for their time will be disallowed.

        c.      <u>Local Counsel</u>

Defendants argue that the use of local counsel, Duncan Green, also resulted in unnecessary fees, in that local counsel engaged in active monitoring of the *Bublitz* litigation and performed substantive work which duplicated work being done by Kutak Rock. In particular, Defendants' expert recommends a substantial deduction for fees generated by Duncan Green Attorney Culver in transmitting

---

[9] The Court wishes to note that the amount of time expended by the Court, as well as the parties, to identify and contest such minor items already outweighs the value of the disputed fees themselves.

-14-

correspondence to Kutak Rock and in reviewing correspondence between others. The Court does not believe it should stand in judgment on lead counsel's decision to give Duncan Green a larger role than simply providing "non-substantive local services." It also appears that Defendant's expert has recommended deductions for a number of activities that were reasonably part of the duties of local counsel, such as preparation of *pro hac vice* forms and making local filings. The Court also concludes that some of the time devoted to reviewing communications from counsel and the Court that Defendants seek to deduct is in fact compensable.

However, the Court agrees that local counsel devoted an inordinate amount of time to following developments in *Bublitz*, even after *Westendorf* was deconsolidated, as well as a substantial amount of time to forwarding correspondence. Plaintiff's expert claims the latter was required because Kutak Rock was not being copied on certain mailings; however, nearly all of the contested fees for forwarding correspondence were incurred after July 2001, when Attorney Culver informed all counsel to be sure to copy Kutak Rock on all correspondence. Even if it was necessary to forward on certain communications, Plaintiff's counsel should not be compensated for work that should have been performed by administrative staff. The Court also notes that while Plaintiff was entitled to retain local counsel in addition to counsel at Kutak Rock and that as a result, some level of inter-firm communication was necessary, the volume of time devoted to correspondence between counsel and third-parties and excessive status conferencing is some evidence, in the Court's view, that this case was indeed over-staffed and over-managed as Defendants allege.

Defendant's expert has recommended a deduction of $21,801.50 for excessive efforts by local counsel. For the reasons set forth above, the Court will deduct $10,000.00.

d.    Attorneys Forney and Rezac

Attorney Forney originally represented Plaintiff as part of the Kutak Rock litigation team at an hourly rate of $125 an hour.  Around September 1, 2001, Attorney Forney resigned to take a position elsewhere and was replaced by Attorney Rezac, whose hourly billing rate was $180.    Defendants argue that Plaintiff's counsel should not be compensated for much of the time spent by Attorney Forney, since Attorney Rezac's work, with the exception of the preparation of written discovery and attendance at depositions, duplicated Attorney Forney's earlier efforts.[10]  Defendants have not sought to discount all of Attorney Forney's time, and the Court agrees in part with Defendants' characterization of the portion of Attorney Forney's time Defendants' expert has identified as non-compensable.  Defendants have requested a deduction of $1,900 for Attorney Forney's time.  Because some of the challenged entries are also accounted for in the Court's deductions for time spent on administrative and clerical activities, below, the Court will deduct $1,500.00 for time spent by Attorney Forney that appears to have been later duplicated by Attorney Rezac.

e.    Summer Associates

Plaintiff's fee request includes $11,544  for 177.6 hours of time billed by six summer associates at a rate of $65 per hour.  Although Defendants argue that they should not be required to pay for any time spent by summer associates, the Court does not believe that work performed by summer associates is *per se* unreasonable.  The Supreme Court has recognized that the use of law clerks and legal

_____

[10] Defendants also argue separately that all of Attorney Rezac's time should be calculated at Attorney Forney's rate, an argument the Court considers below with respect to the "Lodestar Rates of Omaha Counsel."

assistants may promote a more efficient delivery of legal services, as such paralegals may perform tasks that would otherwise require an attorney's attention at higher rates. *See Missouri v. Jenkins,* 491 U.S. 274, 286-87, 109 S. Ct. 2463; 105 L. Ed. 2d 229 (1989). Their time is compensable if it is the community practice to bill for such time, the time is billed separately, and it is "reasonable and not duplicative of other legal fees." *Id.; Hawkins v. Anheuser-Busch, Inc.,* 697 F.2d 810, 817 (8th Cir. 1983).

Nonetheless, there are also certain inefficiencies inherent in having work performed by inexperienced summer clerks, which must be reviewed by supervising attorneys at higher billing rates and which, in furtherance of the educational aspect of the summer experience, may go beyond the precise issues relevant to the case. The billing entries and work product samples submitted to the Court suggest this was the case here. It appears that the majority of the research that can be specifically identified in the billing records resulted in extremely detailed, and duplicative, analyses of the proper application of ERISA to the CIC Plan, and that Plaintiff's counsel had already considered or resolved many of these issues prior to filing Plaintiff's Complaint, six months before the summer associates came on board.[11] Given the background of *Bublitz*, particularly, the fact that this Court's ruling on Plaintiff's motion to remand in that case had already resolved many of these issues, and the possibility that these research projects duplicated work already conducted by Plaintiff's counsel, the Court does not believe

---

[11] The Complaint asserts federal question jurisdiction based on ERISA, states that the CIC Plan is an employee benefits plan and an ERISA welfare plan, and that it is "not limited to a select group of highly compensated or management employees." (Complaint at ¶¶ 1, 7, 12). The summer associate work product submitted on this motion reviewed largely the same issues: whether the CIC Plan was governed by ERISA, whether it was a "top hat plan," welfare plan, or pension benefit plan, the law on severance plans, and the applicable standard for review of ERISA claims in federal court.

this work was reasonably necessary to the prosecution of this case or reduced the need for similar research by higher-paid lawyers.  The Court will adopt the recommendations of Defendant's expert and deduct $11,544.00 for the fees billed by summer associates.

          f.    <u>Staff Librarians and File Clerks</u>

      Defendants argue that Plaintiff's counsel should not recover fees for time billed by administrative staff, including librarians and file clerks, for performing secretarial tasks, such as looking up names and addresses, locating articles on ERISA, creating deposition notebooks, and finding U.S. Code citations. As with summer associates, "[w]ork done by paralegals is compensable if it is work that would have been done by an attorney. If such hours were not compensable, then attorneys may be compelled to perform the duties that could otherwise be fulfilled by paralegals, thereby increasing the overall cost of legal services." *Miller v. Alamo,* 983 F.2d 856, 862 (8th Cir. 1993).   While the use of administrative staff resulted in a savings of attorney time, the majority of these entries would not be billed separately to the client and are therefore best incorporated into overhead costs.  The non-compensable entries identified by Defendant's expert include $96 for 1.3 hours that the Court deems reimbursable legal research time.  In addition, the bulk of the non-compensable time spent by legal assistants was devoted to preparation of the timeline, and is accounted for elsewhere in this opinion.  Defendants' expert has identified $8,084.00 in non-compensable staff librarian and file clerk time, or alternatively, $2,840.00, if reimbursable research time and work on the timeline is excluded.  The Court will therefore deduct $2,840.00.

          g.    <u>Vague, Duplicative Entries</u>

      Defendants identify a number of billing entries that either provide insufficient detail to determine

whether the time spent was reasonable or not, or reflect time Defendants claim is duplicative, such as time billed for intra-firm discussions. Where time entries are vague and leave the Court no basis on which to assess their reasonableness, a denial of such fees is justified. *See H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991) (affirming a 20% reduction in fees based on vague entries); *Houghton,* 828 F. Supp. at 644, 648 (reducing an award by 15% based in part on vagueness). Plaintiff's expert counters that many of these entries are sufficiently specific when taken in context. While the Court finds that both of these arguments have merit to some degree, it concludes that the objectionable entries have already been taken into account in arriving at the other deductions, including deductions for time spent by summer associates and non-attorney staff.[12]   These other deductions also account for time challenged separately here as duplicative. Therefore the Court will not make any further deductions for the vague or duplicative entries described on Defendants' Appendix 4G.

      3.      Clerical, Administrative and Non-Legal Tasks

Defendants argue that Plaintiffs' counsel should not be compensated, or should be compensated at reduced rates, for certain administrative activities handled by attorneys and paralegals, including forwarding correspondence, compiling documents and loading disks into litigation support software. A portion of this time resulted from the difficulty Plaintiff's counsel experienced in accessing information on

--------

[12] To avoid double-counting, Defendant's expert first identified all "non-payable" fees, then deducted amounts associated with block-billing, "excessive efforts" (such as the timeline), and "clerical time," leaving the remainder to account for time associated with "overstaffing and duplication." *See* Legal Fee Review & Report of Bruce R. Meckler, Esq., Jan. 30, 2003, at 4, n.3 However, this category includes both time for "staff librarians and file clerks," which the Court has already accounted for, and "vague entries."  Defendant's expert explains that entries may appear in more than one of these subcategories and since the Court's review of the challenged "vague" entries shows that many were made by summer associates and other paralegal staff, they should not be deducted here as well.

the CD-ROMs provided by Defendants.  To the extent this objection encompasses work done by paralegals, the Court has already considered it.[13]  With regard to the work of attorneys, the Court agrees with Defendants' objections in part, but finds that certain of the objectionable entries either concern what the Court deems to be substantive legal work or appear to be accounted for in the other figures presented by Defendants' expert.[14]  Defendant's expert has recommended a deduction of $8,268.70, and the Court will deduct $6,000.00, which reflects the balance of the time remaining after approximately $490 in compensable substantive work and time of paralegals Wilson and Koperski is excluded.

      4.      <u>Fees for Excessive and Unnecessary Tasks</u>

In addition to charges for duplicative work, Defendants' counsel urges the Court to reduce an award to Plaintiffs' counsel to account for excessiveness in the pursuit of several specific projects which involved significant expenditures of time.  Defendants also ask the Court to view these as examples of the overall pattern of Plaintiff's counsel in this litigation, justifying an overall reduction in any fee award. The Court will consider the latter argument separately in this opinion, but addresses here the reasonableness of the fees for specific tasks challenged by Defendants.

      a.      <u>Preparation of Timeline</u>

---

[13] *See id.*

[14] In his Supplemental Affidavit, Mr. Meckler states that the deductions for clerical, administrative, and non-legal tasks are exclusive of those made for overstaffing, duplicative efforts, and attorney transition.  (Meckler Supp. Aff. at App. B).  However, it nonetheless appears to the Court that certain entries for time spent by litigation clerk Jane Wilson are deducted as both clerical expenses and non-compensable law clerk time.  As the Court has deducted this time elsewhere, these fees are not included in the deduction here for clerical and administrative tasks.

The first such item is the preparation of a "timeline" which required a total of 173 hours, including 132 hours by one biller to review documents. Plaintiff's expert maintains the investment of what amounts to roughly one month of billable time was reasonable because it was performed by paralegal staff at reduced rates and resulted in a useful summary of the evidence in the case to date. The Court does not agree. Upon review of the timeline and the related billing entries, the Court concludes that the timeline, while it may have appeared necessary to Plaintiff's counsel, contains very little information of relevance to Plaintiff's case, and therefore it is not reasonable to assess the cost of producing it against Defendants. Defendants' expert recommends a deduction of $5,315.00 for the timeline, and the Court will deduct that amount.

b.    <u>Abstracting of Depositions</u>

Defendants next challenges Plaintiffs' fee request for 178 hours spent abstracting 23 depositions taken in the *Bublitz* action. Plaintiff's counsel did not take or defend any of these depositions, though they did appear at several. As evidence of the excessiveness of the abstracting effort, Defendants note that 1) the abstracting began in October, 2001, after key deposition testimony had already been distilled in the parties' summary judgment filings in *Bublitz,* 2) that the abstracting continued for at least a month after settlement discussions had commenced in this case, and 3) that Plaintiff's counsel were given access to electronic, searchable transcripts of this deposition testimony.

Although Plaintiff's counsel may have found abstracting relevant deposition testimony preferable to annotating or using the electronic search option, which appears to have created numerous technical difficulties, the scope of the abstracting project and the failure of counsel to present any evidence to the Court that the depositions abstracted were relevant or necessary to Plaintiff's case leads the Court to

-21-

conclude that Plaintiff's counsel made no effort to identify the testimony pertinent to its case and now

expects Defendants to cover the costs for work that may well have been done solely to "keep abreast

of" *Bublitz* – an entirely separate case. Plaintiff's counsel has the burden to establish that fees for

abstracting were reasonably incurred and has left the Court without any way of determining which

abstracts, or how many, were relevant or necessary to this action. *See Hensley v. Eckerhart*, 461 U.S.

at 433 (concerning the plaintiff's burden). Because the Court assumes that certain of the depositions

abstracted were in fact relevant to *Westendorf*, and the Court has also identified billing entries showing

that counsel did on occasion reference certain deposition abstracts in the course of this action, the Court

will allow Plaintiff's counsel 10 percent of the $16,872 Defendants' expert estimates for time spent

abstracting depositions, or $1,687.20. The Court will deduct the remainder, or $15,184.80.

      c.    <u>Drafting of Settlement Demand</u>

      Defendants next challenge127 hours spent by five attorneys in preparing a 15-page settlement

demand in April, 2002. The Court agrees that this amount of time is unreasonable. Plaintiff's expert has

provided the Court with a copy of the settlement demand letter and a later settlement conference

statement that largely incorporates the text of the settlement demand letter. While it is certainly of some

comfort to know that for the price of a small car, Plaintiff's counsel was able to build on their earlier

work product to produce another version of Plaintiff's position for the settlement conference, the Court

believes a reduction of the fee award is in order.

      In addition, it appears that the letter underwent substantial revision and redrafting, perhaps due

to the fact that six months passed while the letter was being generated. The Court also notes that a

portion of the settlement demand letter was devoted to a lengthy discussion of Plaintiff's objections to

the ruling of the undersigned on the interpretation of the CIC Plan in the *Bublitz* summary judgment

proceedings, which represents a duplication of work already performed by counsel in *Bublitz* and was

of questionable benefit to Plaintiff in this case. Defendant's expert has recommended that time spent by

Attorneys Rezac and Thomas, and some time spent by Attorney Schembari, in preparing the settlement

demand be compensated, but that the value of the other attorneys' time, largely that of Attorney Randall,

be deducted. Of the $11,316.20 in Defendant's expert's estimate, $102 have already been accounted

for in the Court's review of staff librarian and file clerk time. The Court adopts the recommendation of

Defendant's expert and deducts the balance of $11,214.20.

        d.    <u>Preparation of Initial Fee Application</u>

Defendants further contend that time spent by Plaintiff's Counsel to prepare their initial Motion

for Attorneys Fees and Costs was excessive in that Plaintiff's counsel included in its fee application 23

hours spent by Attorney Collins to "edit" Kutak Rock bills prior to submission to the Court. As

Defendants acknowledge, reasonable fees for the preparation of a fee application are compensable. *See*

*Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir. 1979), *aff'd on other grounds,* 448 U.S. 122 (1980).

The Court also believes that a portion of Attorney Collins' time appears to have been devoted to

research of attorney's fees issues and review of billing entries that are appropriately part of the

preparation of a fee application. In addition, Attorney Collins devoted some time to reviewing the

attorney fee requests in *Bublitz* and the related Order on attorney fees, which could have facilitated the

preparation of a more focused fee request. Accordingly, these activities should be compensated.

However, the Court has been provided with no explanation of what the "editing" of counsel's bills

entailed or any evidence that this "editing" furthered the ultimate reasonableness of the fee application.

Therefore, the Court will deduct $2,252.25 for time spent by Attorney Collins editing the initial fee submission.

     5.     <u>Lodestar Fees for Out-of-State Counsel</u>

The starting point for any assessment of the reasonableness of fees requested is the "lodestar," defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Blum v. Stenson*, 465 U.S. 886, 891, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). "As a general rule, a reasonably hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated'" for lawyers of comparable skill, experience, and reputation. *Moysis v. DTG Datanet,* 278 F.3d 819, 828-29 (8th Cir. 2002) (citing *Jaquette v. Black Hawk County,* 710 F.2d 455 (8th Cir. 1983)); *Blum,* 465 U.S. at 895, n.11. The court is not limited to local hourly rates where plaintiff after a diligent, good faith effort, is unable to find local counsel able and willing to take the case. *See Emery v. Hunt,* 272 F.3d 1042, 1048 (8th Cir. 2001). However, the Court believes that local hourly rates provide the best standard in this case, where competent local counsel was readily available. *See id.* (citing *Moore v. City of Des Moines*, 766 F.2d 343, 345-46 (8th Cir.1985) for the rule that the district court, which is "intimately familiar" with its local bar, is generally in a better position to make such a determination).

Plaintiff's fee application is based on hourly rates for Kutak Rock attorneys ranging from $110 for junior associates to $200 per hour for three senior attorneys. Plaintiff's counsel has presented affidavits of Attorney Rezac reviewing the qualifications of the Kutak Rock timekeepers and stating that the rates billed on this matter are their regular and customary rates, but Plaintiff's counsel has presented

no supporting affidavits or other evidence demonstrating that these rates are consistent with prevailing market rates in Des Moines for professionals of similar qualifications. *See Blum,* 465 U.S. at 895-96 (requiring fee applicants to "produce satisfactory evidence - in addition to the attorneys' own affidavits - that the requested rates are in line with those prevailing in the community for services by lawyers of reasonably comparable skill, experience and reputation.") Defendants argue that reasonable rates for Plaintiff's Omaha counsel should be based on the rates charged by attorneys of comparable qualifications and experience at the Des Moines firm of Nyemaster, Goode, Voights, West, Hansell & O'Brien, P.C., as the Court found these rates reasonable for the work performed in the *Bublitz* class action.[15]

Just because this Court previously found rates at the Nyemaster firm to be appropriate for the market does not mean that the Nyemaster firm should necessarily be viewed as the ultimate standard of the market as a whole. At the same time, the lack of documentation provided by Plaintiff makes it difficult for the Court to assess whether Plaintiff's counsel is entitled to rates that, in the Court's experience, would be reasonable only for the most highly qualified counsel in the local market.[16] However, the Court need not engage in a detailed discussion, as it appears that Defendants' objections are confined to the lodestar rates charged by four Kutak Rock billers and that time for three of these has

---

[15] Because Defendants have not objected to the billing rates for attorneys from Duncan Green, the Court views Defendants to have agreed that the Duncan Green billing rates are reasonable, with the exception of the increased rates resulting from the temporary substitution of higher-billing counsel at Duncan Green for Ms. Culver during the course of this litigation, which Defendants have contested.

[16] In accepting as reasonable hourly rates of up to $200, the Court believes it is appropriate to express again its regret that the term "reasonableness" can be applied to rates that are "beyond the reach of the vast majority of people in this country." *Bublitz,* slip op. at 26, n.8.

already been substantially reduced or eliminated in connection with some of the other deductions requested by Defendants.  In particular, Defendants' expert has concluded that the billing rates for Attorneys Rezac, Vinjamuri, and Collins, and paralegal Friend, were inflated due to the application of rates higher than those of comparable billers at the Nyemaster firm.  Because the Court has in large part adopted Defendants' arguments denying or reducing fees for Attorneys Vinjamuri and Collins, the objections to their rates have been sufficiently accounted for.  Ms. Friend performed a minimal amount of work on this case that the Court has deemed compensable, and thus, in the interest of efficiency, the Court will assume that its other deductions will more than compensate for the $10 difference between Ms. Friend's billing rate of $95 and the $85 that Defendants suggest as a reasonable rate for someone of her qualifications.

The vast majority of the "rate inflation" Defendants' claim, specifically, $18,199.50 of the $18,499.05, derives from the work of Attorney Rezac.  Defendants' expert has argued that all of Attorney Rezac's time should be reduced, at a minimum, from $180 to $150 per hour to conform it to local market rates, based on those of the Nyemaster firm, and that the Court should further reduce Attorney Rezac's rate to $125 per hour, the billing rate of Attorney Forney, whom Attorney Rezac replaced during the course of this litigation.  Defendants argue that since someone of Attorney Forney's experience could adequately perform the work at $125 per hour, Defendants should not have to bear the higher costs occasioned by the substitution of Attorney Rezac, who was more experienced and thus billed at a higher rate.  Plaintiff's expert argues that although Attorney Forney's resignation may have brought about a transition to more experienced counsel, such a transition would have been necessary in any event as the case progressed.

-26-

The Court finds merit in both arguments.  Although it is impossible at this stage to speculate as to when a more senior litigator, such as Attorney Rezac, would have been added to the *Westendorf* team, and the Court is not prepared to do so, the records provided to the Court indicate that Attorney Rezac took on primary responsibility for the case and that the role of other senior counsel at Kutak Rock diminished after that point.  Given the fact that Defendants accept as reasonable a $165 hourly rate for Attorneys Collins, a litigator with one less year of experience than Ms. Rezac, who has practiced law since 1996, the Court does not believe Ms. Rezac's rate should be reduced to that of Ms. Forney, an associate who had only two years of experience at the time.  However, Defendants are entitled to some reduction in Attorney Rezac's rate to account for the fact that some of her work product could potentially have been performed at a lower rate, but for Attorney Forney's departure.  Thus, the Court will calculate Attorney Rezac's compensable fees at an hourly rate of $140.  The value of the 330.9 hours of Attorney Rezac's time at issue here results in adjusted fees of $46,326.00, rather than $56,562.00, for a net deduction of $13,236.00.

6.    Costs and Expenses

Expenses that are reasonable, necessary, and customarily billed to clients in the relevant economic market are properly compensable as part of a fee award.  *See Pinkham v. Camex, Inc.,* 84 F.3d 292, 294-95 (8th Cir. 1996); *U & I Sanitation,* 112 F. Supp.2d 902, 906 (D. Neb. 2000).  In her initial application for fees and expenses, Plaintiff sought an award of approximately $42,774.00 in expenses incurred through November 30, 2002, $9,568.00 of which, Defendants have specifically contested as unreasonable, in part based on inadequate documentation.  In supplemental documentation, Duncan Green has provided invoices and receipts for its claimed expenses.  However, the Court's

evaluation of the expenses of Kutak Rock is limited to the expense line items on its fee application and at the end of its fee invoices. The Court is troubled by the fact that Plaintiff's counsel made no effort to voluntarily reduce a (partial) expense request that is over 10 percent of Plaintiff's maximum total recovery in this case, not to mention the lesser amount of the actual settlement. However, the Court will reserve judgment on the overall proportionality of the fee and expense application and limit the following discussion to the specific items challenged by Defendants.

a.   <u>Expert Fees</u>

Defendants have identified in Plaintiff's submission $7,425 in fees paid to two expert witnesses. These include fees for services rendered by certified public accountants at Cremes, Holtzbauer & Nearmyer PC from May, 2002 to June, 2002, concerning research on golden parachutes, "specific tax code provisions," and "the historical stock position of Pioneer." In addition, Plaintiff's counsel seeks to recover the cost of retaining Jon Wilcox as an expert witness in April, 2002 to possibly testify about issues relating to mergers and acquisitions and how such issues supported Plaintiff's claims. Mr. Wilcox's invoice does not detail the services he performed. Regardless, it is unclear to the Court what relevance either the CPA's research and report or Mr. Wilcox's potential testimony on the underlying merger might have to Plaintiff's claims. As Plaintiff has failed to adequately justify the expense of these services and has provided no evidence that they were ever utilized, the Court will deduct $7,425 for expert fees.

b.   <u>Travel Expenses</u>

Defendants also challenge as presumptively unreasonable $1,516 in travel expenses of Kutak Rock, which it concludes were incurred in connection with Omaha counsel's attendance at hearings,

-28-

meetings, and depositions held in Des Moines, despite the fact that Plaintiff had retained local counsel located in Des Moines.  As in *Bublitz*, Defendants were represented in this action by the Minneapolis office of Faegre & Benson LLP, and the Court reiterates its conclusion in *Bublitz* that it was reasonable for Plaintiff to hire outside counsel, here the Omaha firm of Kutak Rock, LLP to "counter Defendants' forces."  *See Bublitz,* 224 F. Supp. 2d at 1249.  Although local counsel was presumably competent to handle such proceedings, Plaintiff was entitled to have outside counsel in attendance as well.  In her supplemental filings on this motion, Plaintiff has documented these expenses and so no deduction will be made for this objection.

c.     Overhead Expenses

Defendants challenge as unreasonable $627 in expenses that they argue should be borne by Plaintiff's counsel as part of their overhead costs. These items include mailing and delivery charges, postage, office supplies, and business meals not associated with travel.  *See Emery,* 272 F.3d at 1048 (reiterating the rule that "[p]laintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community.").  Although Plaintiff's counsel cannot pass off to Defendants their costs of doing business, and certain items, such as office supplies, are properly allocated to overhead, many of these costs would typically be passed on to the client, and may therefore be appropriately part of a fee award.  *See, e.g. Assoc. Bldrs. & Contractors of La., Inc. v. Orleans Parish School Board*, 919 F.2d 374, 380 (5th Cir. 1980) (finding photocopying, travel, and telephone expenses recoverable in an attorney fee award). Nonetheless, it remains incumbent on the Court to determine whether such expenses are reasonable.

Duncan Green's supporting documentation shows that the copying costs included in its fee

-29-

application were incurred at a rate of 20 cents per page for internal copying.  The Court finds this

unreasonable and reduces copying costs to 10 cents per page.  This results in a total deduction of

$132.38.[17]  In addition, the requested expenses include $5,219.31 in costs for electronic legal research.

The law of this Circuit is that "computerized legal research must be factored into the attorneys' hourly

rate; hence the cost of the computer time may not be added to the fee award."  *See Standley v.*

*Chilhowee R-IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir. 1993).  Accordingly, the Court will deduct this

amount.  Kutak Rock's supplemental documentation supports the claimed expenses for facsimile, long-

distance, postage, and copying charges.  However, in light of the excessiveness of internal

communications among counsel on this case, as evidenced by the billing records, the Court questions

their reasonableness.  Thus the Court will deduct 25 percent of Kutak Rock's remaining expenses of

$29,209.83, or $7,302.46.  *See Rural Water Systems #1 v. City of Sioux Cir.,* 38 F. Supp. 2d 1057,

1065 (N.D. Iowa 1999), *aff'd,* 202 F. 3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 180 (2000)

(reducing a request for expenses by 15% where submissions did not provide a reason for the expense

and did not include copies of receipts or invoices).

     7.   <u>Lack of Mitigation</u>

     Where attorneys have made a good-faith effort to exclude hours that are excessive or

redundant, courts will consider such deductions as mitigating factors in arriving at an award.  *See*

*Houghton,* 828 F. Supp. at 648.  Defendants argue that Plaintiff's counsel has failed to voluntarily

eliminate duplicative and excessive charges, and that the Court should not limit the reduction in fees and

---

[17] The documentation by Kutak Rock does not indicate the basis of the copying charges
incurred.

expenses requested by Defendants on that basis.

Plaintiff's counsel claims to have mitigated their fee request by voluntarily reducing the fees requested, and a comparison of Plaintiff's invoices and the fee award requested shows that Plaintiff's counsel has deducted approximately $8,600 to arrive at their initial fee application, including $5,000 for the invoice Defendants had challenged here as presumptively unreasonable.  This adjustment amounts to only a 2 percent reduction, even before considering the additional fees counsel has incurred since the initial fee submission.  Plaintiff's counsel has not provided the Court with any indication of the time that was discounted or any evidence that the size of the deduction was adequate to eliminate unreasonable fees and expenses.  The only other discernable mitigating factor here is that Plaintiff's Omaha counsel has, with one exception, based their fee submission on the initial billing rates that applied when this case began, rather than the higher rates those attorneys currently charge.[18]  *See Houghton,* 828 F. Supp. at 648 (finding adherence to historical rates a mitigating factor).  While this is to their credit, the Court finds no cause here to alter any of the reductions it has applied to counsel's fee request.

8.    Fee Request Disproportionate to Result Achieved

In addition to the more specific objections the Court has addressed above, Defendants argue that Plaintiff's attorney fee request is disproportionate to the recovery actually achieved and that the Court should reduce any award to an amount reasonably proportional to the actual recovery.  The Supreme Court has stated that where "a plaintiff has achieved only partial or limited success, the

---

[18] Kutak Rock's submissions indicate that Mr. Langdon's hourly rate increased from $150, the rate applicable in 2000, to $165, in 2001.  Duncan Green has provided no evidence of the applicable rates for their attorneys.

[lodestar] fee may be an excessive amount. . . . . The most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 436.  This Circuit has also recognized the general principle that an award of attorneys' fees must bear some reasonable relationship to the amount in controversy. *See Garst,* 927 F. Supp. at 1187, *citing Tanenbaum v. Agri-Capital, Inc.,* 885 F.2d 464, 471 (8th Cir. 1989).

Here, Plaintiff's attorneys settled claims worth a maximum of $375,000 for a sum considerably less.  The settlement was reached six months before trial, before Plaintiff's counsel had taken or defended any depositions, and before any substantive motions had been filed.  Accordingly, the Court finds that the initial requested award of $233,840 in fees and $42,774 in expenses would be impermissibly disproportionate to the result achieved.[19]

Moreover, as the Court has already noted, the practice of Plaintiff's counsel in this case evidences a pattern of overzealousness and considerable investment of time and resources, with relatively limited results.  The high level of monitoring and management conducted in this case does not seem commensurate with the actual work product produced on Plaintiff's behalf, which was limited to written discovery and a Motion to Stay Deadlines and to Schedule Status Conference, that, although uncontested, was denied.   Plaintiff's fee application itself also serves as a case in point.  Plaintiff's counsel devoted 11 pages of a 17-page brief to a reargument of the merits of the case, while at the same

---

[19] The Court notes that as of December 1, 2002, Faegre & Benson had incurred additional fees and expenses in connection with this action in the amount of $150,000.  Although "[e]vidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable," such a comparison is of limited use here, given the fact that Defendants' counsel was involved in both the ongoing *Bublitz* litigation and the *Westendorf* case and the amount of any overlap in research time and overall work product cannot be determined.

time failing to provide adequate legal authority and supporting documentation for the reasonableness of the requested fees. Similarly, the fee application contains 20 exhibits that primarily relate to the merits of Plaintiff's case, but no evidence of the fee arrangement between Plaintiff and her counsel, no supporting affidavits attesting to the reasonableness of the fees requested, no basis for the voluntary deductions counsel claims to have made, or any details of Plaintiff's claimed expenses.[20]

Likewise, Plaintiff's counsel appear to have adopted a "kitchen-sink" approach to discovery that resulted in an excessive number of documents and responses pertaining to *Bublitz,* but not necessarily of relevance to *Westendorf*.[21] **After this case was filed, Plaintiff's counsel attended every remaining deposition in the *Bublitz* action, without apparent regard to the deponent's knowledge of facts pertaining to Plaintiff's claim.[22]** Plaintiff now claims that Defendants imposed on Plaintiff an obligation to "monito[r] the *Bublitz* action and . . . obtain and review all discovery in the *Bublitz* case" because they refused to permit Plaintiff to duplicate depositions already taken in *Bublitz*. (*See* Plaintiff's Brief at 15). Plaintiff has provided no argument to the Court demonstrating that Plaintiff's counsel was required to master the universe of discovery in *Bublitz* in order to challenge the denial of Plaintiff's claim for benefits.

---

[20] Plaintiff's counsel, in their letter of August 27, 2003, has since advised the Court regarding their fee arrangement with Ms. Westendorf.

[21] As examples of the over-reaching nature of Plaintiff's discovery efforts, Defendants point to requests such as "all documents produced by third parties in . . . Bublitz" and "all discovery responses from all parties [in *Bublitz*]."

[22] Defendant's Final Argument in Resistance notes by way of example that one such "presumably material" witness, Duane Suess, testified on deposition that he had no personal knowledge of Ms. Westendorf's job situation or any contact with her at Pioneer. At 5, n.2.

-33-

For these reasons, further adjustment to any award may be necessary to bring it within a range that is proportional to the results achieved by Plaintiff's counsel.  In order to properly account for the amount of the total bill of Plaintiff's counsel, the Court will reserve a determination on any such adjustment until it has calculated the total deductions outlined earlier and deductions for fees and expenses included in the supplemental filings.

D.    Fees Accrued From December 1, 2002 to July 31, 2003

Finally, the Court must determine an appropriate award to Plaintiff's counsel for the period from December 1, 2002 to July 31, 2003.  The total fees requested for this period are $48,024.50 and the total expenses are $23,026.04.  The majority of these sums derive from the work of the two experts on attorneys' fees and time spent reviewing and responding to their reports.

As the Supreme Court has so aptly noted, "[a] request for attorney's fees should not result in a second major litigation."  *Hensley,* 461 U.S. at 437.  This case, however, has devolved to precisely that.  Counsel on both sides have devoted nearly an entire year solely to the attorney fee issue and have made as many filings with the Court during that period as they did during the course of the entire underlying litigation.  Plaintiff's counsel alone has invested over $70,000, not to mention the costs Defendants have incurred in resisting.  Although the proper allocation of attorney's fees plays an important part of ensuring a fair and equitable system of justice, it is unfortunate that the effort and expense expended to litigate the issue could rise to a level that competes with the cost of resolving the parties' substantive disputes.

With regard to the supplemental request for fees and expenses, the Court believes it is equitable to apply the same approach it adopted in the *Bublitz* attorney fee determination.  That is, the Court will

-34-

calculate the percentage deducted from Plaintiff's counsel's requested award through November 1, 2002 for work that was duplicative, excessive, or otherwise unreasonable, and will apply that percentage to the remaining portion of the bill.

## SUBTOTALS

**Attorney's Fees**

| | |
|---|---|
| Fees requested through 7/31/03: | $281,865.06 |
| Minus – Reduction from Defendants' objections for presumptively unreasonable fees | $0.00 |
| Minus – Reduction from Defendants' objections for overstaffing, transitional, duplicative efforts | $40,247.00 |
| Minus – Reduction from Defendants' objections for non-billable clerical tasks | $6,000.00 |
| Minus – Reduction from Defendants' objections re: excessive efforts | $33,966.25 |
| Minus – Reduction from Defendants' objections re: excessive hourly rates (Opinion 5) | $13,236.00 |
| **Total Fees** | $188,415.81 |

**Expenses**

| | |
|---|---|
| Expenses requested through 7/31/03: | $65,800.60 |
| Minus – Objections to Expenses through 11/31/02 | $20,079.15 |
| Minus – Reduction from Defendants' objections for work from 12/01/02 to 7/31/03 | $7,027.55 |
| **Total Expenses** | $38,693.90 |

These adjustments result in a subtotal of attorney's fees of $188,415.81, which is still in excess of 80 percent of Plaintiff's ultimate recovery in this case.[23]  In light of Plaintiff's recovery and the excessiveness of the fee request, Defendants ask the Court to adopt as a benchmark its determination in *Bublitz* that a fee award less than 40% of the overall recovery is reasonable.  The Court notes that its

---

[23] The Court notes that the settlement amount was exclusive of taxes and withholding, making this result even more disproportionate to what Plaintiff will actually recover.

-36-

fee award would still exceed 50% of Plaintiff's ultimate recovery if it had adopted all of the recommendations of Defendant's expert and that obtaining a fee award at 40% of Plaintiff's recovery would necessitate a reduction in the fee award subtotals here by approximately $100,000, solely in an effort to achieve proportionality.

While in no way condoning the excessiveness of the requested fees, the Court is reluctant, absent any other justification, to penalize Plaintiff's counsel for their errors in judgment with such a drastic reduction. At the same time, Plaintiff's counsel were well aware at the outset of this case that *Westendorf* was an "add-on" to *Bublitz* and that Plaintiff could stand to gain, at most, $375,000. Since the "amount in controversy" should have constrained the resources Plaintiff's counsel could reasonably devote to the case, the Court believes it is appropriate to consider as its benchmark the maximum recovery Plaintiff hoped to achieve, here $375,000, as well as Plaintiff's actual recovery. *See Tanenbaum v. Agri-Capital, Inc.,* 885 F.2d at 471 (counseling that the fee award must be proportional to the "amount in controversy").

Taking a standard contingent fee ratio of 33.33% of Plaintiff's maximum recovery of $375,000 results in a total fee award of $124,987.50. This represents a 33.7% reduction in the fee subtotal indicated above and is in appropriate proportion to the amount in controversy. This reduction will also adequately address the fact that the fee subtotal above does not incorporate certain additional deductions that were not quantified in the report of Defendant's expert, but for which the Court believes adjustments should be made, including: 1) clerical or administrative activities contained in the Duncan Green invoices, which were not sufficiently detailed to be incorporated into Defendants' objections, and 2) time spent preparing Plaintiff's Motion to stay deadlines and to schedule status conference, which was

denied.  For these reasons, the Court will award Plaintiff's counsel $124,987.50 in attorney's fees.  The

Court finds $38,693.90 in expenses

to be reasonable.


      E.      <u>Plaintiff's Attorney Fee Arrangement With Counsel</u>

On August 27, 2003, after all of the submissions of the parties on Plaintiff's Motion were filed,

the Court received a letter from Plaintiff's counsel that, among other things, apprised the Court for the

first time of the fee arrangement between Plaintiff and her counsel.  Plaintiff's counsel state that "a verbal

agreement has existed throughout this case between Ms. Westendorf and the law firms she retained for

this matter.  The agreement is that Ms. Westendorf will pay the standard hourly rates for each of the law

firms involved, and that she will be responsible for all expenses incurred in connection with the case."

Assuming Ms. Westendorf has the same understanding as her counsel regarding their "verbal

agreement", it would appear that under the terms of the contract, Plaintiff's counsel would stand to

recover, not a standard 33 percent contingent fee, but 100 percent of any amount they would expend on

the case, regardless of Plaintiff's recovery and regardless of the Court's determination here that

approximately 50 percent of the fees and expenses were unreasonable.

In their confidential Settlement Agreement, the parties submitted to the Court's jurisdiction the

resolution of attorney fees and costs in this matter, and the Court believes that an examination of the

Plaintiff's fee arrangement with her counsel is essential if it is to reach a fair and just result.  *See Hoffert

v. Smith*, 656 F.2d 161, 165 (5th Cir. 1981) (noting that the contingent fee award was the single most

important factor bearing on plaintiff's settlement recovery other than the total settlement amount.).

Although attorney fee arrangements are contracts under state law, the courts have long recognized that the court "has the power and the responsibility to monitor contingency fee agreements for reasonableness." *Int'l Travel Arrangers, Inc. v. Western Airlines,* 623 F.2d 1255 (8th Cir.1980) (citing decisions from the First and Third Circuits); *Green v. Nevers,* 196 F.3d 627, 633 (6th Cir. 1999) (citations omitted) (the "federal district court has 'broad equity power' to fix attorney fees under contingency fee contracts"); *Hoffert v. Smith*, 656 F.2d 161, 165 (5th Cir. 1981). As the Sixth Circuit has stated, where enforcement of a contingent fee contract denies the client any recovery or otherwise becomes

> "unfair in its enforcement, [the] lawyer's retention of his full legal fee is unjustified and exposes him to an accusation of oppression and overreaching. The court will not sit idly by and give its pro forma approval. It has the 'power to compel attorneys to act equitably and fairly towards their clients.'"

*Krause v. Rhodes,* 640 F.2d 214, 220 (6th Cir. 1981) (quoting *Wade v. Clemmons,* 377 N.Y.S.2d 415 (Sup. Ct. 1975)); *Kalawongsa v. Moffett*, 105 F.3d 283, 286-87 (6th Cir. 1997) (applying the same rule in a case involving both contingent and hourly fees). These principles have even greater force here, where counsel entered into an unwritten agreement that unconditionally granted them full recovery of any fees they chose to incur. *See* ABA Opinion 190 (1939) ("[a]n attorney has the right to contract for any fee he chooses so long as it is not excessive").

The Court is guided as well by the rules of professional conduct that guide all lawyers. Rule 1.5 of the ABA Model Rules of Professional Conduct provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." ABA Model Rule of Professional Conduct 1.5(a) (2002). The Iowa Code of Professional Responsibility for Lawyers

-39-

echoes this concern, prohibiting lawyers from entering into an agreement for, charging, or collecting a

"clearly excessive fee." Iowa Code of Professional Responsibility for Lawyers DR 2-106(A) (2003).

One of the factors to be considered in the determination of the reasonableness of the fee is the amount

involved and the results obtained. ABA Model Rule 1.5(a)(4), Iowa Code DR 2-106(B)(4).  As

previously discussed, the potential maximum recovery for Plaintiff in this litigation, $375,000, was

grossly disproportionate to the resources the Plaintiff's attorneys expended on the litigation and

subsequent dispute over attorneys' fees.

        As a result of the Court's determination outlined above, it appears to the Court that

Plaintiff's net recovery in this action, which is the sum of her settlement and the attorney fees and costs

awarded by the Court here, will not exceed $30,000 and may well be nothing, since applicable taxes

and withholdings are to be deducted from the total settlement award.  This result is clearly inequitable.

Since the Court has found that Defendants are not obligated to pay Plaintiff's counsel fees and expenses

that are unreasonable, Plaintiff should not either.  Therefore, the Court orders Plaintiff's counsel to

reimburse Plaintiff in full for payments of any fees and expenses made under the terms of their fee

arrangement that exceed the amount awarded here.  Based on the submissions on this Motion, the Court

estimates this amount to be $183,984.26 through August 31, 2003.

## III.    ORDER

        Plaintiff's Motion for Attorneys' Fees and Costs is **granted in part** and **denied in part**.

Defendants are hereby ordered to pay Plaintiff $124,987.50 in attorneys' fees and $38,693.90 in

expenses, for a total of $163,681.40.  Counsel for Plaintiff are hereby ordered to reimburse Plaintiff

$183,984.26 for the portion of fees already paid by the Plaintiff to counsel that the Court has determined to be unreasonable.

IT IS SO ORDERED.

Dated this ___8th___ day of September, 2003.


_____

ROBERT W. PRATT
U.S. DISTRICT JUDGE